OLE SIMONSON *vs.* HORACE THOMPSON and others.

January 23, 1879.

*Railroads—Right of Way over Public Lands of United States.*—The act of congress of March 3, 1855, "extending the provisions of the act of August 4, 1852, entitled 'An act to grant the right of way to all rail and plank-roads and macadamized turnpikes passing through the public lands belonging to the United States, to the public lands in the territories of the United States," simply extended the act of 1852, with all its provisions, exceptions and restrictions, so as to operate in the territories the same as in the states.

*Same—Rights of Minnesota & Pacific R. Co.*—Under the act of congress of March 3, 1857, entitled "An act making a grant of land to the territory of Minnesota, in alternate sections, to aid in the construction of certain railroads in said territory, and granting public lands, in alternate sections, to the state of Alabama, to aid in the construction of a certain railroad in said state," and the act of the legislative assembly of the territory of Minnesota of May 22, 1857, to execute the trust created by said act of congress, the Minnesota & Pacific Railroad Company was authorized to appropriate a right of way for the lines of road to be constructed by it, over the public lands of the United States, except where the Indian title might still exist, and except, probably, lands otherwise appropriated by the general government; and after the location of such right of way by said company, any person purchasing from the United States, with notice of such location, took subject to such right of way.

Plaintiff brought this action in 1877, in the district court for Kandiyohi county, against the defendants, mortgage trustees in possession of the main line of the First Division of the St. Paul & Pacific railroad, to recover damages for trespasses committed by them in operating such railroad upon the north half of the southeast quarter of section 32, in township 120, of range 36, in that county, belonging to the plaintiff. The defendants, in their answer, pleaded a right of way in the railroad company. A jury was waived, and the action tried before *Brown, J.*, and the facts, as proved and admitted, were as follows: The First Division of the St. Paul & Pacific Railroad Co., which is the successor to the rights and franchises of the Minnesota & Pacific Railroad Co., constructed its main line over the premises in question, in April, 1870, and on September 24, 1870, caused a map of a section of 10 miles of the road, including that portion involved in this case, to be filed in the general land-office at Washington. The entire main line was completed in October, 1871; and ever since its construction over the premises in question, it has been continuously operated by the company, or by the defendants as trustees. On June 18, 1870, the plaintiff made a homestead entry on the land in question, upon which he made final proof on May 30, 1876, and a patent was issued to him on August 23, 1876.

Upon these facts, the court held that the selection of its route by the railroad company did not become operative until September 24, 1870, and that the plaintiff had, prior thereto, acquired a right of possession as against the company. Judgment was ordered for plaintiff, a new trial was refused, and the defendants appealed.

*Geo. L. & Chas. E. Otis*, for appellants.

*L. M. Brown* and *C. L. Brown*, for respondent.

GILFILLAN, C. J. The defendants claim a right to the land in controversy from two sources: *First*—Through the act of congress of August 4, 1852, (10 St. at Large, 28,) granting "the right of way to all rail and plank-roads, and macadamized turnpikes, passing through the public lands belonging to

the United States," which, from its language, appears to have been limited to lands lying within states, and the act of congress of March 3, 1855, (10 St. at Large, 683,) extending the provisions of the former act to the public lands in the territories. *Second*—From the act of the territorial legislature of Minnesota of May 22, 1857, (Laws 1857, ex. sess. c. 1,) incorporating the Minnesota & Pacific Railroad Company, to whose rights the defendants have succeeded, which act, it is claimed, appropriated to the construction of the lines of road authorized by it, rights of way across the public lands of the United States.

The first of these claims of right we think is not well founded. The act of 1852 contained a proviso "that none of the foregoing provisions of this act shall apply to or authorize any right in any lands of the United States other than such as are held for private entry and sale, and such as are unsurveyed, and not held for public use by erection or improvements thereon." It is conceded that the lands in question did not, when the requisite acts were done to perfect the title claimed by defendants under the acts of congress, come within the description of lands in this proviso. It is insisted, however, that the restriction in the proviso was not contained in the act of March 3, 1855, but that the provisions of the former act (other than those contained in the proviso) were extended to all public lands in the territories, without any limitation or restriction whatever. The act of 1855 reads: "Be it enacted, * * * that the provisions of the act entitled," (giving the title of the act of 1852,) "be and the same are hereby extended to all the public lands of the United States in the territories of the United States." The defendants argue that the words "to all the public lands of the United States in the territories," etc., extend the provisions of the act of 1852 over the territories, without the restrictions contained in that act. Looking at the language alone, the argument has some plausibility. But the reason for one rule in the states, and another in the territories, is not apparent. Also,.

the dropping, as applied to the territories, of the restrictions in the act of 1852, would subject to these rights of way lands that might be held for public use by erections or improvements thereon. It would require more explicit terms than are in the act of 1855 to show that congress intended such results. We are satisfied, then, that it was the intention in the act of 1855 merely to extend the operation of the act of 1852, in all its provisions, to the territories.

The proposition that a state may authorize a public road through lands of the United States may seem, upon first impression, to require an answer in the negative. But the power of a state to do so was distinctly held in *United States v. Railroad Bridge Co.,* 6 McLean, 517, upon reasoning the soundness of which can hardly be disputed. We should follow the decision in that case, if necessary. This brings us to the only remaining question in the case: Did the state or the territorial government ever authorize the Minnesota & Pacific Railroad Company, through which defendants derive their rights, to construct its road through lands of the United States?

The authority, if anywhere, is contained in the act of incorporation passed by the territorial legislature May 22, 1857. Laws 1857, ex. sess., *c* 1. Concerning the general powers of the territorial legislature, section 6 of the act organizing the territory of Minnesota declared "that the legislative power of the territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act; but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon property of the United States. * * * All laws passed by the legislative assembly and governor shall be submitted to the congress of the United States, and, if disapproved, shall be null and of no effect." If a state legislature could appropriate to public uses public lands of the United States, the territorial legislature could, under this act, exercise the same power.

The act of congress of March 3, 1857, (11 St. at Large, 195,) commonly called the Land-grant Act, granted to the territory of Minnesota public lands, in alternate sections, for the purpose of aiding in the construction of certain lines of railroad within the territory. It provides that the lands designated should be subject to the disposal of the territory or future state, for the sole purpose of constructing such lines, and prescribes that except as to 120 sections to each line, the lands granted should be disposed of only as the work should be carried on, and that "the said railroads and branches shall be and remain public highways of the government of the United States, free from toll or other charge upon the transportation of any property or troops of the United States," and "that the United States mail shall be transported over said roads and branches, under the direction of the post-office department, at such price as congress may by law direct," and "that in case any lands on the line of said roads or branches are within any Indian territory, no title to the same shall accrue, nor shall the same be entered upon by the authority of said territory or state, until the Indian title to the same shall have been extinguished."

From this act it is evident that congress intended that the designated lines of road should be constructed, and intended to bring about that result so far as congressional action could, and to confer upon the legislature of the territory or future state, so far as congress could, all power, authority and rights necessary to facilitate the construction of the lines of road. It is not to be supposed that congress contemplated that the mere fact that the title to some of the lands over which the lines would run might be in the United States should stand in the way of the speedy completion of the lines, or render further action on the part of the general government necessary. . Although there is no express grant of a right of way over public lands not included in the grant of alternate sections to the territory, we must presume, from the general purposes of the act, that it was intended to vest the right of way,

wherever it was necessary to accomplish such purposes. The act, then, passed to the territory, not only the specified amounts and sections of lands, but also a right of way over other lands of the United States, except where the Indian title might still exist, and except, probably, lands otherwise appropriated by the general government.

The act of the territorial legislature, of May 22, 1857, of which the first chapter incorporated the Minnesota & Pacific Railroad Company, was passed to effect the construction of the lines of road mentioned in the act of congress of March 3, 1857. That company was, by section 2, "authorized and empowered to survey, locate, construct, complete, alter, change the location of, reconstruct, maintain and operate a railroad, with one or more tracks or lines of rails, on such route, and with such alignment and graduation as the company shall think proper, from Stillwater, by way of St. Paul and St. Anthony, *via* Minneapolis, to the town of Breckenridge on the Sioux Wood river, with a branch from St. Anthony, *via* Anoka, Saint Cloud and Crow Wing, to Saint Vincent, near the mouth of the Pembina river," these lines being among those designated in the act of congress. Section 3 of the act provides, "That said corporation shall have the right to enter upon any lands for the purpose of making surveys, and for the right of way, and may appropriate to its sole use and control, for the purposes contemplated herein, land not exceeding two hundred feet in width throughout the entire length of its said railroads, may enter upon and take possession of, and use, all and singular any lands, streams and materials of every kind, beyond the width of two hundred feet, for the location and construction of depots and stopping stages, station-grounds and houses, and for the purpose of constructing bridges, dams, embankments, excavations, spoil-banks, turn-outs, engine-houses, shops and other buildings, necessary for the constructing, completing, altering, maintaining, preserving and complete operation of said railroads. All such lands, waters, materials and privileges belonging to

the territory or future state of Minnesota, are hereby granted to said corporation for said purposes; and this act shall be sufficient notice to all persons claiming any interest in the same; but lands owned or belonging to any person, company or corporation may be taken and appropriated for the purposes aforesaid, and shall be valued and paid for in the manner hereinafter provided."

Section 16 of the act granted to the company, upon certain conditions, all the interest and estate, present and prospective, of the territory and future state, in or to any and all the lands granted by congress to the territory, by the act of March 3, 1857, "together with all and singular the rights, privileges and immunities, conferred or intended to be conferred by said act."

The grant of a right to construct a road along a designated line, and to enter upon and appropriate any and all lands for that purpose, undoubtedly confers the necessary right of way, so far as the legislature is competent to grant it, whether the power to grant it is because of the state's ownership of the land to be taken, or of its sovereign power to appropriate it to public use; and the right of way is implicitly granted by this act, so far as the legislature could grant it, without further act, except as to private lands, which could be appropriated only upon making just compensation. With respect to such lands, and with respect to such only, the act provides for further proceedings by the company, before its right to appropriate shall be perfect.

It is immaterial whether the legislature intended to confer the right of way over public lands under the sovereign power of the territory, or by passing the right vested in the territory by the act of congress. There can be no question that it intended to give the company the right, subject, in respect to private lands, to the necessity of making compensation, to construct the lines without further recourse to the legislature.

It is argued that because the act of May 22, 1857, expressly

grants lands of the territory or future state, the intention to grant rights in United States lands is excluded.  The presumption of such exclusion cannot overcome that arising from the general intent and purpose of the act, and certainly could not overcome the expressed intention to pass all rights, privileges and immunities conferred on the territory by the act of congress.  It appearing from the findings that the company had surveyed, located and constructed its line across the land of plaintiff, on or about April 30, 1870, and that the plaintiff's entry as a homestead was made June 18, 1870, after such location and construction, he had, before his rights accrued, full notice of those of the company, and he took his rights subject to them.

Judgment should have been for the defendants.

Order reversed.