WILLIAM C. NASH *vs.* JAMES E. SULLIVAN.

June 7, 1882.

**Land Grant—"St. Vincent" branch of St. Paul & Pacific Railroad—Act of Congress of March 3, 1865.**—The act of congress of March 3, 1865, (13 U. S. St. at Large, 526,) entitled "An act extending the time for the completion of certain land-grant railroads in the states of Minnesota and Iowa, and for other purposes," regranted to the state of Minnesota the grant of March 3, 1857, (11 U. S. St. at Large, 195,) of six sections per mile, to aid in the construction of the "St. Vincent" branch of the St. Paul & Pacific railroad, which had been released by the state by acceptance of the terms of the joint resolution of congress passed July 12, 1862. (12 U. S. St. at Large, 624,) substituting a branch road to Lake Superior for one to St. Vincent, and increased such grant to 10 sections per mile. Hence, said act of March 3, 1865, in effect is *a grant* of 10 sections per mile to the state to aid in the construction of the St. Vincent branch.

**Same—Act of Congress of March 3, 1871.**—The subsequent act of congress, entitled "An act authorizing the St. Paul & Pacific Railroad Company to change its line in consideration of a relinquishment of lands," passed March 3, 1871, (16 U. S. St. at Large, 588,) did not require a release to the United States of the entire lands between Crow Wing and St. Vincent, but only of the lands along the abandoned line between Crow Wing and Otter Tail or Rush Lake, the lands along the line from the latter point to St. Vincent remaining unaffected by said act of congress, or the release required thereby.

**Same—Conveyance of Such Grant by Sp. Laws 1865, c. 6.**—The act of the legislature of the state of Minnesota, passed March 2, 1865, (Sp. Laws, 1865, c. 6,) entitled "An act to aid and facilitate the completion of the St. Paul & Pacific Railroad and branches," is not merely a grant or conveyance of land to the railroad company, but is also a law, and therefore, in construing it, such effect must be given to it as will carry out the intent of the legislature. Such intent cannot be defeated by applying to the grant the rules of the common law applicable to mere grants or conveyances. Hence, (it clearly appearing from said act that it was the intent of the legislature to grant to the railroad company all land grants which might *thereafter* be made by congress to the state for the purpose of aiding the construction of the lines of road of the St. Paul & Pacific Railroad Company, and to authorize the governor, in behalf of the state, to execute conveyances thereof to the railroad company,) conveyances of such lands

executed to it by the governor, in accordance with said act of the legislature, are valid and operative to convey title to the railroad company, although the state had no title to these lands on the second of March, 1865, when it made the grant to the company.

Plaintiff brought this action in the district court for Polk county to recover certain land in the possession of the defendant. The case was submitted on stipulated facts, from which it appears, in addition to the facts stated in the opinion, that the land in controversy is within the ten-mile limit of the constructed line of the "St. Vincent branch" of the St. Paul & Pacific railroad, now owned by the St. Paul, Minneapolis & Manitoba Railway Company, and is included in the grant claimed by that company, for the construction of such line, under the acts of congress recited in the opinion; that it was, prior to March 3, 1857, and continued until May 5, 1864, to be, in an unceded Indian country; that, with other lands, it was properly certified to the state of Minnesota by the land department of the United States, on April 30, 1874, and a patent issued therefor on January 14, 1875; and that on February 22, 1877, the governor of this state conveyed the same to the St. Paul & Pacific Railroad Company, whose interests and rights have been acquired by the St. Paul, Minneapolis & Manitoba Railway Company, from which company plaintiff acquired his title.

The action was tried by *Stearns*, J., without a jury, and judgment ordered for plaintiff. Defendant appeals from an order refusing a new trial. The case is stated in the opinion.

*Reynolds & Watts*, for appellant.

The grant in the act of congress of March 3, 1857, (11 U. S. St. at Large, 195,) did not apply to or include any land then within the unceded Indian country. *Dubuque & Pacific R. Co.* v. *Litchfield*, 23 How. 66; *Leavenworth, etc., R. Co.* v. *United States*, 92 U. S. 733; 3 Washburn on Real Prop. 168; 4 U. S. St. at Large, 729.

The joint resolution of congress of July 12, 1862, (12 U. S. St. at Large, 624,) and the acceptance of its terms by this state, (Sp. Laws, 1863, c. 3,) rescinded any grant under the act of March 3, 1857, on the line of the so-called "St. Vincent branch." The only act which it is claimed restores this grant is the act of congress of March 3

1865, entitled "An act extending the time for the completion of certain land-grant railroads in the states of Minnesota and Iowa, and for other purposes," (13 U. S. St. at Large, 526.) Section 9 of this act (recited in the opinion) is the only portion which in any way relates to such a restoration. This section contains strange provisions, utterly incongruous and at variance with all prior and subsequent legislation, and it cannot, except by the faintest conceivable implication, be construed as a restoration of the grant relinquished under the joint resolution of July 12, 1862. There are no words in the act to restore or make a grant.

If it be conceded, however, that the act of March 3, 1865, restores the former grant in the act of March 3, 1857, it does not include the land in question, which was in an unceded Indian country. The former grant did not, and could not, include any lands within unceded Indian country, and therefore any restoration of that grant could not include any such lands.

Even if the grant was made or restored by the act of March 3, 1865, it was again surrendered under the act of congress of March 3, 1871, (16 U. S. St. at Large, 588,) because: 1st, it was provided that that "act should only take effect upon condition of being in accord with the legislation of the state of Minnesota," and it will be seen from Sp. Laws 1863, c. 3; Sp. Laws 1864, c. 3, § 8; Sp. Laws 1864, c. 4; Sp. Laws 1867, c. 1, § 2; Sp. Laws 1870, c. 52, that it was not; 2nd, the act provides for a release of the entire grant along the St. Vincent line, and then only grants land along the altered line. The altered line did not include the portion to which a grant of this land would belong.

The act authorizing a transfer from the state was passed March 2, 1865, (Sp. Laws 1865, c. 6,) prior to the act of congress of March 3, 1865, and could only provide for a transfer of the title to lands then held or owned by the state. Lands subsequently acquired by or enuring to the state still remain the property of the state. *Rice* v. *Railroad Co.*, 1 Black, 358; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 545; *Polk's Lessees* v. *Wendal*, 9 Cranch, 87; *Polk's Lessees* v. *Wendell*, 5 Wheat. 293; *Patterson* v. *Winn*, 11 Wheat. 380.

*Seagrave Smith*, for respondent.

MITCHELL, J. This is an action to recover possession of 80 acres of land situated in Polk county. The chain of title under which plaintiff claims is—*First,* a grant from the United States to the state of Minnesota; *second,* a grant from the state to the St. Paul & Pacific Railroad Company, to which the St. Paul, Minneapolis & Manitoba Railway Company is successor; *third,* a conveyance from said last-named railway company to plaintiff. The conveyances from the United States to the state, and from the state to the railroad company, and from the railroad company to plaintiff, are stipulated to have been sufficient in form to pass such title as might lawfully be conveyed under the acts of congress and of the legislature of the state. The defendant, who has been in possession since 1876 as a mere trespasser, having neither title nor estate to or in the land, denies plaintiff's title, alleging that the conveyances from the United States to the state of Minnesota, and from the state to the railroad company, were wholly without authority of law, and that the same were absolutely void.

We shall assume, without deciding the point, that defendant is in position to attack these conveyances, and shall therefore proceed directly to consider the validity of plaintiff's title. And the first question in order will be whether the state has ever acquired title from the United States to the land in question. The act of congress of March 3, 1857, (11 U. S. St. at Large, 195,) commonly called the "land-grant act," granted to the territory of Minnesota six sections per mile to aid in the construction, among others, of a railroad "from Stillwater, by way of St. Paul and St. Anthony, to a point between the foot of Big Stone lake and the mouth of Sioux Wood river, *with a branch via St. Cloud and Crow Wing to the navigable waters of the Red River of the North, at such point as the legislature of such territory may determine.*"

The legislature of the territory, by act of May 22, 1857, (Laws 1857, Ex. Sess. *c.* 1,) entitled "An act to execute the trust created by an act of congress entitled," etc., fixed the point to which this branch to the navigable waters of the Red River of the North should be built at St. Vincent, near the mouth of Pembina river, which action was recognized by congress in the joint resolution of July 12, 1862, (12

U. S. St. at Large, 624,) entitled "A joint resolution authorizing the state of Minnesota to change the line of certain branch railroads in said state and for other purposes;" also, by the act of March 3, 1871, (16 U. S. St. at Large, 588,) entitled "An act authorizing the Saint Paul & Pacific Railroad Company to change its line in consideration of a relinquishment of lands."

The joint resolutions of July 12, 1862, provided for a change of location of this branch, or a part of it, from St. Cloud and Crow Wing to St. Vincent, and the substitution in place of it of a branch from any point on the existing line between the Falls of St. Anthony and Crow Wing, and extending in a north-easterly direction to the waters of Lake Superior, and granted to the state of Minnesota, and in aid of the construction of this new branch, the alternate sections of land within the six-mile limits of such branch, with a right of indemnity between the 15-mile limits thereof. This resolution was only to take effect from the filing in the general land-office of the acceptance by the authorities of the state of such substitution, "whereupon the land north of the intersection aforesaid in the grant as authorized by the act of third March, 1857, being by said acceptance disencumbered of the railroad grant, shall be dealt with as other public lands of the United States." This substitution was duly accepted and such acceptance filed in the general land-office by the authorities of the state. Sp. Laws 1863, c. 3. The land in controversy is situate north of the intersection of this branch to Lake Superior with the original line between St. Anthony and Crow Wing, authorized by the act of congress of March 3, 1857, and hence, if included in the grant made by that act, was, in the language of the joint resolution of July 12, 1862, "disencumbered" of such grant.

The contention of defendant is that this land was never afterwards granted or regranted by congress to the state, and hence that the action of the executive officers of the United States, in assuming to certify or convey it to the state, was without authority of law. This brings us to the consideration of the act of congress of March 3, 1865, (13 U. S. St. at Large, 526,) entitled "An act extending the time for the completion of certain land-grant railroads in the states of Minnesota and Iowa, and for other purposes."

Section 1 of this act provides that the quantity of lands granted to the state of Minnesota to aid in the construction of certain railroads, as indicated in the act of March 3, 1857, shall be increased to 10 sections per mile for each of said roads and branches. Section 9 of the act is as follows: "The provisions of this act shall also be construed so as to apply and extend to that portion of the line authorized to be vacated by the joint resolution approved July 12, 1862, entitled 'A joint resolution authorizing the state of Minnesota to change the line of certain branch railroads in said state, and for other purposes,' notwithstanding the vacation thereof by said state, *as though said joint resolution had not passed,* and also to the line adopted by said state, in lieu of the portion of the line so vacated."

Counsel for appellant argues ingeniously and with ability that this act neither restores the old grant of March 3, 1857, nor makes a new grant to the St. Vincent branch; that the effect of the act was merely to provide that this additional grant of four sections per mile should enure to whichever of the two lines might thereafter be built, and to leave it to subsequent congressional action to restore the surrendered grant for the St. Vincent branch if it should be deemed expedient to do so; or, in other words, as we understand counsel, that this act itself made no grant, but simply provided that the increase of four sections per mile should apply to the St. Vincent branch only in case congress should, at any time thereafter, restore the grant of March 3, 1857. We think that such a construction of the act is utterly untenable. It amounts, in effect, to congress saying: We do not propose now to grant you any land to aid in the building of this St. Vincent branch; but if we ever should grant you six sections per mile, we hereby declare that this six sections shall be increased to 10 sections per mile.

We think the manifest intent and effect of this act of March 3, 1865, was to restore to the St. Vincent branch the grant of six sections per mile which had been surrendered by an acceptance of the joint resolution of July 12, 1862, and to increase it to 10 sections per mile; and therefore that the act amounts to an affirmative grant of the latter amount. This is the practical construction that has been placed upon the act for over 15 years, without question, by both the

legislative and executive departments of the government of the United States and of the state of Minnesota. This land grant has been adjusted between the United States and the state, and between the state and the railroad company, and the lands certified and transferred upon this construction of the law; and of its correctness we have no reasonable doubt. And, in any event, it would, on considerations of public policy, be now too late to question its correctness, unless it was very clearly wrong.

The view which we have taken of this act of March 3, 1865, as amounting in itself to a grant of 10 sections per mile to the St. Vincent branch, renders it unnecessary to consider whether land to which the Indian title had not been extinguished was included in the grant made by the act of March 3, 1857; for the Indian title to the land in dispute had been by treaty extinguished prior to the passage of the act of March 3, 1865.

The appellant further contends that even if a grant was made or restored by this act of March 3, 1865, it was again surrendered and annulled by act of congress of March 3, 1871, (16 U. S. St. at Large, 588,) entitled "An act authorizing the St. Paul & Pacific Railroad Company to change its line in consideration of a relinquishment of lands," which reads as follows: "Be it enacted," etc., "that the St. Paul & Pacific Railroad Company may so alter its branch lines that instead of constructing a road from Crow Wing to St. Vincent, and from St. Cloud to the waters of Lake Superior, it may locate and construct, in lieu thereof, a line from Crow Wing to Brainerd, to intersect with the Northern Pacific railroad, and from St. Cloud to a point of intersection with the line of the original grant at or near Otter Tail or Rush Lake, so as to form a more direct route to St. Vincent, with the same proportional grant of lands, to be taken in the same manner along said altered lines, as is provided for the present lines by existing laws: *provided, however,* that this change shall in no manner enlarge said grant, and that this act shall only take effect upon condition of being in accord with the legislation of the state of Minnesota, and upon the further condition that proper releases shall be made to the United States by said company, of all lands along said abandoned lines from Crow Wing to St. Vincent, and from St.

Cloud to Lake Superior, and that upon the execution of said releases, such lands so released shall be considered as immediately restored to market without further legislation."

The only alteration authorized by this act was that the eastern end of the St. Vincent branch might be swung down from Crow Wing to St. Cloud, from which point the altered portion of the line might be built so as to enter and intersect with the former line at or near Otter Tail or Rush Lake. From this last point it contemplated the building of a road upon the old line up to St. Vincent; for the object of allowing the change is stated to be "to form a more direct route to St. Vincent." Appellant insists that, as a consideration for permission to alter the line of that part of the St. Vincent branch from Otter Tail or Rush Lake eastward, this law provided for a release to the United States of the *entire grant from Crow Wing to St. Vincent*, and that all the lands that the state was to have were 10 sections per mile for the altered or new line from St. Cloud to Otter Tail or Rush Lake, leaving the line from the latter point to St. Vincent entirely without any grant. We do not so understand this act. The releases required by it were only of the lands along the "abandoned lines" from Crow Wing to St. Vincent. The only line to be abandoned was from Crow Wing to Otter Tail or Rush Lake; the line from thence to St. Vincent, so far from being abandoned, was to remain the same. The lands, therefore, to be released were only those along the original line from Crow Wing to Otter Tail. In lieu of these lands thus released, the state was to receive the same proportional grant along the new or altered line between St. Cloud and Otter Tail; subject to the proviso, however, that the change should not enlarge the entire grant. The land grant between Otter Tail and St. Vincent, of which the land in controversy is a part, was wholly unaffected by this act of March 3, 1871.

But, *secondly*, appellant contends that even if the title was vested in the state at the date of the governor's deed to the railroad company, on the 22d of February, 1877, yet that this deed was void for want of authority to execute it, there being, it is claimed, no law of the state granting this land to the railroad company. The argument on this point is that the title to the land vested in the

state, if at all, under the act of congress of March 3, 1865, and that the act under which the railroad company claimed a grant from the state was passed March 2, 1865, *one day before the state acquired title,* and that grants made by a legislature are not warranties, and therefore, if the thing granted was not in the grantor at the time of the grant, no estate passes to the grantee; and therefore that the act in question was absolutely void as to any lands thereafter granted to the state by congress. The case of *Rice* v. *Railroad Co.,* 1 Black, 358, is cited as sustaining this doctrine. If an act of the legislature be considered merely as a grant, this doctrine would, undoubtedly, be sound. But it is always to be borne in mind, in construing a legislative grant, that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of the legislature. That intent should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private parties. The rules of the common law must yield to the legislative will. This important rule is not at all alluded to in the case of *Rice* v. *Railroad Co.,* but it is distinctly announced by the same court subsequently in the case of *Schulenberg* v. *Harriman,* 21 Wall. 44, and *Missouri, etc. Ry. Co.* v. *Kansas Pac. Ry. Co.,* 97 U. S. 491.

As to the intent of the legislature in the grant to the railroad company by the act of March 2, 1865, (Sp. Laws 1865, c. 6,) there can be no reasonable doubt. Section 2 of the act is as follows:

"Sec. 2. Any and all additional grants of land made prior to the passage of this act, *or which may hereafter be made* by congress of the United States to the state of Minnesota for the purpose of aiding in the construction of the lines of railroad or any portion of them authorized to be constructed by the St. Paul & Pacific Railroad Company, shall enure to the benefit of said company; and said lands, and the present and *future* interest of the state in or to them, are hereby granted and assigned unto the said company upon the same terms and conditions as the lands heretofore granted for the same purpose, together with the conditions contained in said act of congress donating the same. And the title of all lands heretofore or *hereafter* granted by the congress of the United States to the State of Minnesota, for

the purposes aforesaid, shall vest in said company at the time and upon the terms prescribed by said act or acts of congress making the grant, and it shall be the duty of the governor, on behalf of the state, to convey to said company the lands. so granted, according to the terms and provisions contained in the act or acts aforesaid."

Nothing can be clearer than the intent of the legislature by this act to grant to the railroad company all lands that might thereafter be granted to the state by congress to aid in the construction of these railroads, and to authorize the governor in behalf of the state to execute the proper conveyance to the company, which the governor has done by virtue of the authority thus conferred upon him by law. Moreover, if any ratification or confirmation were necessary, this grant has been repeatedly recognized and ratified, impliedly at least, by the state in subsequent legislative acts. See Sp. Laws 1866, *c.* 1; also Sp. Laws 1867, *c.* 1 and *c.* 13; Sp. Laws 1875, *c.* 49; Sp. Laws 1877, *c.* 201; Sp. Laws 1878, *c.* 71.

Our conclusion, therefore, is that plaintiff established a valid title to this land, and therefore the findings of the court below were justified by the evidence.

Order affirmed.