THOMAS COLEMAN *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY
COMPANY.

March 5, 1888.

**Land-Grant Railway—Right of Way over School Lands.**—When the
act of congress of March 3, 1857, commonly known as the "Land-Grant
Act," was passed, the title to the government sections 16 and 36, within
the territory of Minnesota, and the right to dispose thereof, still remained
in the United States. Under that act and the act of the legislative as-
sembly of the territory, passed May 22, 1857, the Minnesota & Pacific
Railroad Company acquired a right of way over the even sections not dis-
posed of prior to the location of its line, including sections 16 and 36.
*Simonson* v. *Thompson*, 25 Minn. 450.

**Trial—Requisites of Special Findings.**—Where there is no general verdict,
but special findings only, all the material issues must be passed upon to
authorize the court to order a judgment in the case.

Plaintiff brought this action in the district court for Anoka county,
to recover possession of a strip of land 100 feet in width across sec-
tion 36, township 31, range 24, in that county, with the value of its
use and occupation by the defendant, and the damage occasioned to
the land by the construction and maintenance of defendant's railway
upon it. The answer admitted defendant's possession of the whole
strip, denied plaintiff's title, and his averments of value and damage,
and alleged title in itself as the owner of all the property, franchises,
etc., formerly and successively belonging to the Minnesota & Pacific,
the St. Paul & Pacific, and the First Division of the St. Paul & Pacific
Railroad Companies. In regard to the possession and rights of the
defendant's predecessors, the answer alleged the incorporation of the
Minnesota & Pacific Co. under Laws 1857, Ex. Sess., *c.* 1, its authority
to build the railroad in question, the provision in the charter, men-
tioned in the opinion, granting a right of way over all lands belong-
ing to the territory or state, and also alleged that the whole of section
36 belonged to the state at the time the whole of the strip in question
was appropriated by the Minnesota & Pacific Co., which located its
road thereon in 1857, and that defendant and its predecessors have

been in the uninterrupted and exclusive possession of the strip for more than 20 years.   The answer further alleged (in pursuance of Gen. St. 1878, c. 34, § 34) that defendant's line had been constructed and operated across the land for more than one year last past; that its entry and use and occupation were for railroad purposes; that no compensation had been made except as before stated, and that it was ready and willing to pay such compensation on having the same assessed by the jury trying the action, provided the plaintiff, on the trial, should establish his right to recover the land.   In his reply the plaintiff denies the 20 years' possession alleged in the answer, denies that the territory or state ever owned the section except in trust for support of public schools, or had any right or power to convey any part of it except for that purpose, and denies generally the allegations of the answer.

At the trial, before *Rea,* J., and a jury, the case was submitted to the jury for their findings upon special questions, in answer to which they found (1) that the plaintiff "is the owner of the land set forth in the complaint;" (2) that "for more than 20 years prior to the commencement of this action" the defendant "was in the occupation and possession of a strip of the land, 14 feet in width, for a railroad track used since 1863;" (3) that "the land in question was school land granted to the state of Minnesota, and so remained until sold by the state to the predecessor in title of plaintiff, on the 16th day of October, 1866;" (4) that "in case the defendant has acquired no right to occupy any portion of the 100-foot strip," the plaintiff is entitled to recover, "for use and occupation, $500; and for damages to his tract for the taking and use of the 100-foot strip for railroad purposes, $3,500;" (5) that "in case the defendant has acquired the right to use and occupy a 14-foot strip through said land," the plaintiff is entitled to recover, "for use and occupation, $500; for damage to land of plaintiff by reason of the taking of the remaining 86 feet of said 100-foot strip, $2,500."

Upon these findings, (there was no general verdict,) judgment was ordered and entered that plaintiff recover the land, or in lieu thereof the sum of $2,500, with interest from September 16, 1886, (the date of the verdict,) "for and on account of the taking and per-

petual use of said land for the purposes of said railway company, the defendant," and the further sum of $500, with interest from the same date, and .$150 as attorney's fees. From this judgment the defendant appealed.

*W. E. Smith,* for appellant.

*Wilson & Lawrence,* for respondent.

VANDERBURGH, J. There was no general verdict in this case, but a special verdict, embracing findings upon some, but not all, the issues. There is no special finding upon the issue raised by the reply upon the allegations in the answer in respect to the corporate and charter rights derived by defendant from the several legislative acts specified in the answer, under which it claims to be the successor of the Minnesota & Pacific Railroad Company. This issue was therefore undisposed of at the trial. It is doubtful if defendant's corporate existence and succession to the last-named company's rights were contested, since the findings assume and state that the defendant's road has been located over the land in controversy since 1863. And the fact is assumed by the court in its decision upon the motion for judgment upon the special verdict. But this and other questions were doubtless not deemed material in the view taken by the court of the right of the Minnesota & Pacific Company to enter upon school sections; for if that company was originally a trespasser, the plaintiff might recover in any event, unless barred by the statute of limitations.

2. The principal question in the case, then, was whether, by virtue of the land-grant act and the original charter, the defendant's predecessor, to whose rights it claims to have succeeded, acquired a right of way over the school sections through which its line was located prior to the sale thereof by the state. It is not probable that at this late day the question will arise very frequently, and we think it was necessarily involved in the decision of this court in the case of *Simonson v. Thompson,* 25 Minn. 450. The organic act of the territory of Minnesota reserved the sections 16 and 36 for the purpose of being applied to schools in the territory and state thereafter to be erected. The act of congress authorizing a state government, which was passed February 26, 1857, submitted to the people of the terri-

tory the proposition, for their acceptance or rejection, that sections Nos. 16 and 36 in every township should be granted for school purposes, with a provision for supplying an equivalent for deficiencies for any portion thereof sold or otherwise disposed of. The constitution was not, however, adopted till October following. In the mean time it is conceded that the title to the school lands, as well as other public lands within the territory, still remained in the United States, and congress had the power to dispose of them. *Frisbie* v. *Whitney,* 9 Wall. 187; *State* v. *Batchelder,* 1 Wall. 109. There was nothing, then, to prevent congress from granting or authorizing the grant of the right of way to a railway company over any of the public lands, including sections 16 and 36. That it was the intention of congress, by the land-grant act of March 3, 1857, (11 U. S. St. at Large, 195,) under which defendant claims, and also of the territorial legislature, by the act of May 22, 1857, (Laws 1857, Ex. Sess. *c.* 1,) constituting the defendant's original charter, (as it is alleged,) to grant a right of way over all even sections to which the title or right of disposal still remained in the United States, was fully determined by the case of *Simonson* v. *Thompson, supra.* And under the reasoning in that case the grant of the right of way must necessarily be held to have extended to school sections, as well as other even sections. The act of congress granted the right of way over all lands of the United States, except those specially reserved or otherwise appropriated or disposed of. No such disposal or appropriation had then been made, and the same rights were in turn granted by the territorial legislature to the Minnesota & Pacific Railroad Company, by the act of May 22, 1857. It was said in the case last cited: "The right of way is granted by this act so far as the legislature could grant it, without further act, except as to private lands, which could only be appropriated upon making just compensation." And no provision is made for the purchase or condemnation of right of way, except in the case of private owners. *Union Pacific Ry. Co.* v. *Douglas Co.,* 31 Fed. Rep. 540. In determining the validity and effect of the territorial charter referred to, it must be remembered that it is to be construed as a law, and not merely as a grant; and as such it was

valid and effectual for the purposes intended. *Nash* v. *Sullivan*, 29 Minn. 206, (12 N. W. Rep. 698.)

3. The only material question to be determined in any particular case is whether any private right has attached, such as to bar the claims of the railroad company, and render a resort to condemnation proceedings necessary. In this case, the school section over which the road is laid was purchased from the state after the railroad was built. It is found by the jury that "the defendant has been in the occupation and possession of a strip of fourteen feet in width for a railroad track, used since 1863." But this clearly has reference to the claim of adverse possession, which is thus limited to the land actually occupied by the track. The line must then have been previously located, and the road built. The right of the corporation which built the road therefore antedates that of the plaintiff.

4. It is not found that the company had limited its location to a right of way only 14 feet in width, but that it had been in the occupation and possession of that much for a railroad track since 1863. This has reference to the issue of adverse possession; and upon that ground, and no other, a proportionate deduction is made from the estimated amount of damages for the 100 feet claimed by the company. The trial court in this case proceeded upon the theory that the company's original entry was without color of right or title, and that therefore the adverse possession was only co-extensive with the actual occupancy, as held in *Coleman* v. *Northern Pacific R. Co.*, 36 Minn. 525, (32 N. W. Rep. 859,) in which case the defendant seems to have relied upon the defence of adverse possession only. But it is hardly to be presumed that if the company located its line on this land under its charter, it laid out a right of way only 14 feet in width. And the answer sets up that in the year 1857 the Minnesota & Pacific Railroad Company located its right of way 100 feet in width across the section, being the strip in controversy, and that the same was necessary therefor, and that it had ever since been so held and used. This was denied by the reply, and hence made an issue in the case; but it is altogether ignored in the findings. In the view we have taken in respect to the right of way of the corporation under

the acts referred to, this issue also became material, and should have been passed upon. *Pint* v. *Bauer*, 31 Minn. 4, (16 N. W. Rep. 425.)

There must be a new trial.

Judgment reversed.