Statement of Facts.

[No. 2,082.]

# THE WESTERN PACIFIC RAILROAD COMPANY *v.* LLOYD TEVIS AND GEORGE H. KERR.

41 489
86 282
41 489
89 364

RIGHT OF WAY OF CENTRAL PACIFIC RAILROAD.—PRE-EMPTIONERS.—
The right of way granted to the Central Pacific Railroad Company of California, over the public lands of the United States, for its road, became perfect upon the filing of the plat of the location of the railroad in the proper land office, as against preëmptioners who had not perfected their preëmption right by payment of the price of the land.

POWER OF CONGRESS OVER PRE-EMPTIONERS.—Congress has the power to grant a right of way for a railroad over public lands which are occupied by persons who have the right to preëmpt, but have not yet perfected that right by proving up and making payment for the land.

A PRE-EMPTIONER NOT A CLAIMANT OF PUBLIC LAND.—A claimant of public land, within the meaning of the third section of the Act of Congress granting a right of way over the public lands to the Union and Central Pacific Railroad Companies, is one who has an interest in the land recognized by the laws of the United States. One who is a preëmptioner, but has not paid for the land, is not such claimant.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

On the 1st day of July, 1862, Congress passed an Act granting to the Union Pacific Railroad Company and the Central Pacific Railroad Company of California the right of way over the public lands of the United States for their respective roads. On the 1st day of October, 1864, the said Central Pacific Company assigned this right, from Sacramento to San Francisco, to the Western Pacific Railroad Company. On the 3d day of March, 1865, Congress ratified this assignment. The respondent Kerr was living on the northwest quarter of section six, township number six north, of range number six east, Mount Diablo base and meridian. When the Western Pacific Company was about to build its road over this land, it commenced an action to condemn a portion of it for its track, and Commissioners were appointed,

CAL. REPS. XLI—62

who assessed the value of the land to be taken, and the money was paid into Court. Afterward, the Western Pacific Railroad Company and George H. Kerr each filed a petition for leave to withdraw the money. The Court below ordered the money (four hundred and ninety-nine dollars and eighty-five cents) to be paid to Kerr, and the Western Pacific Railroad Company appealed from the order.

The other facts are stated in the opinion of the Court.

*Robert Robinson* and *Lewis Ramage*, for Appellant.

Nothing passes the title to public land, but a patent or grant by Act of Congress. (*Wilcoxson* v. *Jackson*, 13 Peters, 498.) An imperfect title cannot be set up against a grant from the Government. (*United States* v. *King*, 3 Howard, 773.) Title from the United States is superior to an entry with the Register and Receiver. (*Hooper* v. *Scheinmer*, 23 How. U. S. 225; *Griffith* v. *Durfitt*, 17 Missouri, 31; *Dickerson* v. *Brown*, 9 S. & M. 130; *Wiggins* v. *Lusk*, 12 Illinois, 132; *Landers* v. *Brant*, 10 How. U. S. 348.) The grant of the right of way over Government land is, without reserving any benefit, right, or privilege to settlers or preëmptors; but the grant of the alternate odd sections, reserves or excepts from the operation of lands granted, valid preëmption claims, etc. (Third and fourth sections of the Act as amended July 2d, 1864.) We refer to these sections to show that the right of way was granted over all Government lands, whether the same had been settled upon, or preëmpted, or not; but the rights of preëmption claimants are reserved from operation of the grant of the alternate odd sections of the land.

*Henry Starr*, for Respondent.

The third and fourth sections of the Act of Congress, passed July 1st, 1862, provide for and exempt lands to which a preëmption claim or homestead claim may have attached.

If the title to the land did not pass to Kerr by virtue of

the .payment of the purchase money and the proving up of his preëmption claim, which I claim it did, I think he had an equitable inchoate vested right which Congress could not divest him of by the grant to the railroad.  In *The United States* v. *Fitzgerald*, 15 Pet. 407, it was decided that no reservation or appropriation of public land can be made after the citizen has acquired the right of preëmption.  The doctrine is thus broadly laid down in the opinion of the Court in that case.  If Congress may override and disregard the rights acquired by actual settlers, and the expenditure of labor and money in erecting improvements upon the land, and subduing it by cultivation, it must possess an equal right to refuse its patent to the preëmptioner after the payment of the purchase money.

In *Lytle* v. *The State of Arkansas*, 9 How. 333, the Court say: "The claim of preëmption is not that shadowy right which by some it is considered to be.  Until sanctioned by law it has no existence as a substantive right; but when covered by the law it becomes a legal right, subject to be defeated only by a failure to perform the conditions annexed to it."

In *Delassus* v. *The United States*, 9 Pet. 133, Mr. Chief Justice MARSHALL says, that "no principle is better settled in this country than that an inchoate title to lands is property."  And again he says: "The inquiry then is, whether this concession was legally made by the proper authorities, and might have been perfected into a complete title"—was *property*.

In *The Northern Railroad Co.* v. *Gould*, 21 Cal. 260, Mr. Justice NORTON says: "It was doubtless the purpose of the Act of Congress merely to give a right to enter upon the public lands, assuming them to be vacant, and its effect is to relinquish to the plaintiffs any claim for compensation that might belong to the United States as proprietor under any proceeding under the State law to appropriate the land for

public use. But does this confer upon the plaintiff the right to enter upon premises in the actual occupancy of a settler without compensating him for the damage done to his possession?

"The United States, upon ejecting such an occupant, might not be under any obligation to pay for his improvements, but they may give to him a preëmption privilege; and this is in consonance with the policy heretofore pursued by the General Government toward settlers upon the public lands. There is scarce a doubt but this defendant will ultimately become the owner of one hundred and sixty acres of the land he occupies, with all the improvements, upon paying the Government price of the unimproved land."

By the Court, Rhodes, C. J.:

The respondent, Kerr, settled on the land in controversy in 1854, with the intention of preëmpting it, and has ever since lived upon and improved it. In 1856 he filed his declaratory statement, but that was of no avail to him, as the township in which the land is situated was then unsurveyed. The township was afterward surveyed, and the township plat was filed in the Land Office at Sacramento, on the 20th of February, 1868. Kerr filed a declaratory statement in that Land Office on the 13th of May, 1868, and in due time proved up his preëmption claim, paid the purchase money, and received his certificate of purchase. The plat and location of the railroad was filed in the Land Office on the 30th of January, 1865. The question is whether the respondent, Kerr, or the petitioner, the railroad company, is entitled to the money which, in the proceedings to acquire the right of way for the railroad, was paid into Court on account of the right of way over this land.

The right of way over the public lands of the United States, became perfect upon the filing of the plat of the loca-

tion of the railroad in the proper Land Office. This right did not extend to a parcel of land in or to which a private person had acquired a title or interest, which he could maintain as against the United States. At the time the plat of the location of the road was filed, Kerr had not filed his declaratory statement. It was held by this Court, in *Hutton* v. *Frisbie*, 37 Cal. 475, that Congress has the power, at any time after a settler has settled upon and taken steps to acquire a preëmption right to a tract of public land, but has not perfected his right by the payment of the price of the lands, to withdraw the lands from the operation of the preëmption laws, and confer a right of entry upon another. The same doctrine was laid down by the Supreme Court of the United States in *Whitney* v. *Frisbie*, 9 Wall. 187. It follows that Congress has the power, under similar circumstances, to grant to another the right of way over the lands, or any other right which is of less magnitude than the entire title, or the right to acquire the title by purchase.

But it is contended by Kerr, that under the provisions of the third and fourth sections of the Act of Congress of July 2d, 1864 (13 U. S. Stats. 356), he is entitled to damages for the right of way for the railroad. The fourth section throws no light on the question. The lands therein mentioned are the alternate sections, which, with certain exceptions and reservations, were granted to the respective railroad companies. The third section provides that "in case the owner or claimant of such lands or premises and such company cannot agree as to the damages [for the right of way over such lands], the amount shall be determined by the appraisal of three disinterested Commissioners," etc. This section applies, in terms, to lands within the Territories; but conceding that the provision is applicable to lands within the States, so far as the matter of compensation is concerned, the question arises whether the respondent comes within the provision. He was not the owner of the land at the time when the

grant of the right of way took effect, nor was he the claimant, within the meaning of the Act. A claimant is one having some interest in the land, which is recognized by the laws of the United States. One who has entered upon and improved a parcel of public land, without having taken a step toward the acquisition of the title, cannot be regarded as the claimant of the land. His position in this respect is not strengthened by the fact that, after the filing of the plat of the location of the railroad, he became the purchaser of the land, because if he was not at that time the claimant of the land, the grant of the right of way over that land then took effect, and his purchase was subject to the right of way for the railroad.

Judgment reversed, and cause remanded.

Mr. Justice Sprague did not express an opinion.