[No. 13339.   In Bank. — November 4, 1890.]

## THE SOUTHERN PACIFIC COMPANY, Appellant, v. BARTLETT BURR, Respondent.

| 86 | 279 |
| 120 | 60 |
| 120 | 62 |
| 86 | 279 |
| 132 | 241 |
| 132 | 245 |
| 86 | 279 |
| 135 | 203 |
| 86 | 279 |
| 146 | 88 |

RIGHTS OF PRE-EMPTORS — WITHDRAWAL OF PUBLIC LANDS FROM SALE. — Congress has full power to withdraw public lands from sale, though in possession of qualified pre-emptors, if they have not paid for the land, and may sell or grant such land to others, as it pleases.

ID. — RAILROAD GRANT — EJECTMENT — EVIDENCE AS TO PRIOR PRE-EMPTION CLAIMS. — In an action of ejectment by the successor in interest of the Central Pacific Railroad Company to recover possession of a strip of land forming part of the right of way granted to the company by Congress, evidence is not admissible to show possession of the land by the predecessors of the defendant prior to the railroad grant, and that they were qualified pre-emptors, if it appears that none of them procured title to the land before it was granted to the railroad company.

GRANT TO CENTRAL PACIFIC RAILROAD COMPANY — RIGHT OF WAY — EASEMENT — GRANT OF LAND — RIGHT OF POSSESSION — EJECTMENT. — The act of Congress of July 1 1862, granting to the Central Pacific Railroad Company a right of way two hundred feet in width on each side of its road, did not grant a mere easement for the construction and operation of its road, but operated as a special grant of land, and is a conclusive legislative determination of the reasonable and necessary quantity of land to be dedicated to this public use, and gave to the grantee the exclusive right to the possession of all the land embraced in the grant of such right of way; and the railroad company may maintain an action of ejectment to recover possession of the whole of the four hundred feet so granted, although only occupying a small portion thereof for its road-bed.

ID. — OFFER OF LEASE. — The right of such railroad company to recover the land so granted is not affected by the fact that it offered to lease to defendant the parcel in dispute, as the defendant had no right to inclose or occupy the land without permission of the railroad company.

EJECTMENT — WHEN ACTION WILL NOT LIE — EASEMENT — RIGHT OF ENTRY. — For a mere easement, an action of ejectment will not lie; but wherever a right of entry exists, and the interest is tangible, so that possession can be delivered, the action will lie.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Hale & Craig*, for Appellant.

The act of Congress passed July 1, 1862, granted plaintiff's predecessor an absolute and unqualified right

of way, to the extent of two hundred feet on each side of the main line of its road to be built, through and over all public lands of the United States. (Sec. 2 of said act; 2 Lester's Land Laws, 52.) Upon certain preliminary steps to condemn a right of way being taken, a railroad company, if in possession, shall be authorized to remain so; and if not in possession, shall be authorized to take possession of the strip of land of the designated width. (Code Civ. Proc., sec. 1254; Hittell's Gen. Laws, art. 846, sec. 22; see also secs. 20, 35; *Central P. R. R. Co.* v. *Benity*, 5 Saw. 118.) Ejectment is the proper remedy, and the plaintiff is entitled to be restored to the possession of the land, to the extent of the entire part of the grant occupied by defendant. (*Central P. R. R. Co.* v. *Benity*, 5 Saw. 118; *City and County of San Francisco* v. *Sullivan*, 50 Cal. 603; *City of Visalia* v. *Jacob*, 65 Cal. 436.) The lands involved were public lands at the time of the grant, and patent was not obtained by defendant's predecessor until long after the completion of the road. (*W. P. R. R. Co.* v. *Tevis*, 41 Cal. 489; *Farley* v. *S. V. M. & I. Co.*, 58 Cal. 142.)

*Wallace & Prewett*, for Respondent.

The legal presumption is, that the land in question is and was private property at the time of the commencement of this suit. (Code Civ. Proc., sec. 1963, subds. 11, 12.) The plaintiff acquired nothing by the grant of the right of way to which the action of ejectment has any remedial relations. (*Wood* v. *Truckee Turnpike Co.*, 24 Cal. 474; Washburn on Easements, 161.) The right of way is an incorporeal hereditament. (Washburn on Easements, 8.) Ejectment will not lie in favor of a party to try his right to enjoy an easement, nor will it lie against one claiming an easement in land to try his right to enjoy it. (*Child* v. *Chappell*, 9 N. Y. 246, 251; Washburn on Easements, 568.) Ejectment is maintainable only for corporeal hereditaments. (Tillinghast's

Adams on Ejectment, 19; *City and County of San Francisco* v. *Calderwood,* 31 Cal. 585; *People ex rel. Jenkins* v. *Duncan,* 41 Cal. 507; *Wood* v. *Truckee Turnpike Co.,* 24 Cal. 474.) The legal title must prevail in actions of ejectment. (*Estrada* v. *Murphy,* 19 Cal. 248, 272; *Clark* v. *Lockwood,* 21 Cal. 222; *Emerick* v. *Penniman,* 26 Cal. 119, 124; *O'Connell* v. *Dougherty,* 32 Cal. 458, 462; *Hartley* v. *Brown,* 51 Cal. 465; *Sacramento Savings Bank* v. *Hynes,* 50 Cal. 195.) To hold that a mere easement is superior to the legal title would reverse the old and well-established rule. (*Wood* v. *Truckee Turnpike Co.,* 24 Cal. 474; *Munroe* v. *Thomas,* 5 Cal. 470; *Thomas* v. *Armstrong,* 7 Cal. 286.)

Works, J. — The following opinion was prepared by Belcher, C. C., when this case was pending in Department One: —

" This is an action to recover possession of about five acres of land situate in Placer County. The case was tried before the court, without a jury, and judgment was given for defendant. The plaintiff moved for a new trial, and, the motion being denied, appealed from the judgment and order. The land in controversy is situated within and forms a part of the right of way granted to the Central Pacific Railroad Company of California by act of Congress passed July 1, 1862, entitled ' An act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military, and other purposes.' Section 2 of the act provides ' that the right of way through the public lands be and the same is hereby granted to said company for the construction of said railroad and telegraph line; . . . . said right of way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad, where it may pass over the public lands.' The plaintiff is the successor in interest of the original

grantee, and, as such, claims a right to the possession of the disputed premises. The defendant is the successor in interest of one Skillinger, to whom a patent for a quarter-section of land, embracing the disputed premises, was issued by the United States in December, 1880, and, as such, he claims title in fee. The defendant had the land inclosed, and the plaintiff offered to allow him to maintain his inclosure, and use the land, on condition that he would accept a lease thereof and pay a nominal rent therefor. He accepted a lease for a year, but at the expiration of the term refused to renew it, saying that he owned the land, and ' he wouldn't pay a cent.'

" At the trial, the defendant was permitted, against the objections of the plaintiff, to prove that the quarter-section patented to Skillinger was agricultural land, and that it was occupied as early as 1853, and continuously thereafter; that one Mitchell lived on it from 1860 till after the railroad was constructed across it, and was a qualified pre-emptor; that Mitchell was succeeded by one Summers, who was a citizen of the United States, and, with his family, resided on the land for a time, and then sold it to one Fuller; that Fuller sold it to a Mrs. Warren, who filed on it and then sold it to Skillinger, who afterwards filed on it himself. We are unable to see that this testimony was relevant or material for any purpose. When the act of 1862 was passed, and until after the railroad was constructed, the quarter-section was public land of the United States, and Congress had full power to withdraw it from sale, or to sell or grant it, as it pleased. ( *Western Pacific Railroad Co.* v. *Tevis,* 41 Cal. 489; *Farley* v. *Irrigating Co.,* 58 Cal. 142.)

" The principal question discussed by counsel is, Did the plaintiff have any such interest in the land as would enable it to maintain an action of ejectment? The theory of respondent is, that it had not; that the act of 1862 granted only an easement for the construction and operation of a railroad and telegraph line across the land,

and that, subject to this easement, the legal title passed to Skillinger under the patent of 1880; that, having only an easement, the plaintiff had, and can have, no right to use the land for any other purpose, and no cause of complaint until it is disturbed or obstructed in the enjoyment of the easement; and that, if disturbed or obstructed, its only remedy is by an action known under the old system as an action on the case, or by bill in equity.

"This theory is rested mainly upon the authority of *Wood* v. *Turnpike Co.*, 24 Cal. 474. In that case, the plaintiffs purchased at sheriff's sale, under execution, ' all the right, title, interest, claim, and property of the Truckee Turnpike Company in and to the Truckee turnpike road, a highway,' and having obtained the sheriff's deed, commenced an action of ejectment to recover possession of the property so purchased. It was held that the plaintiffs could not maintain the action, because,—1. The franchises of the defendant did not pass by the sheriff's deed; 2. A road or right of way is an incorporeal hereditament, and ejectment is maintainable only for corporeal hereditaments; 3. The lands traversed by the road were public lands of the United States, and the plaintiffs by their purchase acquired no title and no possessory interest therein; 4. 'The way levied upon and sold as the property of the company did not belong to it by any proprietary right. The way was *publici juris*. Its uses were not only public, but it belonged to the public by title.' The road involved in that case was an ordinary toll-road, constructed on public lands, without any special grant of a right of way.

"Since the decision was rendered, the law has in some respects been changed. The code now provides that, 'for the satisfaction of any judgment against a corporation authorized to receive tolls, its franchise and all the rights and privileges thereof may be levied upon and sold under execution in the same manner and with like effect as any other property.' (Civ. Code, sec. 388.)

And it has lately been held that the right of way for such a road is private property, though held for a public use, and is incident and necessary to the privilege of collecting tolls thereon, and constitutes an interest in the land on which the road rests. ( *Welch* v. *County of Plumas*, 80 Cal. 338.) We think that case plainly distinguishable from this. Here there was a special grant of a right of way two hundred feet in width on each side of the road. This grant is a conclusive legislative determination of the reasonable and necessary quantity of land to be dedicated to this public use, and it necessarily involves a right of possession in the grantee, and is inconsistent with any adverse possession of any part of the land embraced within the grant. It is true, the strip of land now actually occupied by the road-bed and telegraph line may be only a small part of the four hundred feet granted, but this fact is of no consequence. The company may at some time want to use more land for side-tracks, or other purposes, and it is entitled to have the land clear and unobstructed whenever it shall have occasion to do so.

"It is said that the plaintiff had no right to use the land for any purposes other than its railroad and telegraph line, and this may be conceded. But, under the law of this state, railroad companies are required to fence in their roads (Civ. Code, sec. 485), and the plaintiff could undoubtedly have included within its fences the whole four hundred feet. It is also said that when the plaintiff offered to lease to the defendant the parcel in dispute, on payment of a small rent, it was attempting to use the land for an unauthorized and unlawful purpose. But the defendant had no right to inclose and occupy the land at all without the plaintiff's permission. The demand, therefore, that he accept a lease cannot affect the right of recovery. Besides, the demand may have been intended only as a recognition of the plaintiff's right to take and use the land for its legitimate purposes

whenever it might wish to do so. The exact point involved here was before the United States circuit court for the district of Nevada in *Central Pac. R. R. Co.* v. *Benity,* 5 Saw. 118, and it was held that the plaintiff could recover possession of the land in an action of ejectment. The court said: 'It may be admitted that for the obstruction of a mere easement the recovery of the possession of the land itself would not be the proper remedy; but, in order that the plaintiff in the case at bar may make such use of the land as the grantor intended it should under the grant of a right of way, it becomes necessary to take and keep an actual possession of the land. It must also be a possession exclusive of all other persons. This is obvious enough as to all the land upon which a track, a depot, or other superstructure is placed, and we think the same is true of the whole two hundred feet on each side of the track. The grant is a right of way to the extent of two hundred feet on each side of the track, and the plaintiff is entitled to possess and use the whole quantity. . . . .

"The right of the plaintiff to possess the land in dispute springs, not from an actual necessity for its use at any given point of time, but from the grant of the right of way to the extent of two hundred feet on each side of the track, a grant which, as we view it, carries with it, necessarily, a right to the possession of all the land within the limits named. Moreover, it might materially interfere with the plaintiff's enjoyment of the right granted, if obliged to permit third persons to occupy all such portions of its right of way as it was not at the moment using. Whenever needed, the delay necessary for ejecting an occupant might cause inconvenience. In *City of Visalia* v. *Jacob,* 65 Cal. 434, the action was ejectment to recover a portion of a public street, and it was held that the action would lie. The court said: 'It is true, an action of ejectment may be maintained by a municipal corporation for the recovery of the

possession of a street wrongfully possessed by an individual, whether the corporation owns the fee, or the adjoining proprietor retains it.' So in *City of Winona* v. *Huff*, 11 Minn. 119, the action was ejectment to recover possession of a public square. The land had been owned by the defendant, and dedicated to the public for a public square. Subsequently, he entered upon, inclosed, and held possession of the square, claiming title to it. It was held that the action could be maintained, and the court said (page 136): 'For a mere easement, perhaps, the action would not lie; but wherever a right of entry exists, and the interest is tangible, so that possession can be delivered, an action of ejectment will lie.' We think the law correctly stated in the above-cited cases, and that, under it, the plaintiff in this case could maintain its action of ejectment. We therefore advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial."

We are satisfied with this opinion, and, for the reasons therein stated, the judgment and order appealed from are reversed, and the cause remanded for a new trial.

BEATTY, C. J., McFARLAND, J., FOX, J., PATERSON, J., SHARPSTEIN, J., and THORNTON, J., concurred.