## LILIENTHAL *v.* SOUTHERN CALIFORNIA RY. CO.

(Circuit Court, S. D. California. June 19, 1893.)

### No. 295.

1. PUBLIC LANDS—RAILROAD COMPANIES—RIGHT OF WAY.

Act Cong. March 3, 1875, § 1, grants to certain railways therein specified a right of way, of given width, through the public lands, "also ground adjacent to such right of way for station buildings," etc. Section 4 provides that any railroad company desiring to avail itself of the provisions of the act shall, within a stated time, "file with the register of the land office for the district where such land is located a profile of its road," and that, after such location is approved by the secretary of the interior, all lands over which the right of way passes shall be disposed of subject to such right. *Held,* that no right to grounds for station purposes attaches until the railroad company has acquired the right of way by compliance with the provisions of the act.

2. SAME—STATION GROUNDS—PRIOR SETTLEMENT.

Defendant railroad company filed a map of the land it desired to acquire for station grounds before it had acquired the right of way by filing the required profile of the road. This profile was afterwards filed and approved; but, before either was done, plaintiff settled on the land, and filed his declaratory statement. He afterwards completed the purchase, and a patent was issued to him. *Held,* that he took the land free from any claim on the part of the railroad company, for the filing of the profile was a condition precedent to the initiation of any right in its favor, and his settlement, to which the patent related back, antedated that.

At Law. Action by Jesse W. Lilienthal against the Southern California Railway Company. Judgment for plaintiff.

Rothchild & Ach and Graves, O'Melveny & Shankland, for plaintiff.

A. Brunson, for defendant.

ROSS, District Judge. The subject of this controversy is a certain 20-acre tract of land selected, or attempted to be selected, by

the California Southern Railroad Company, the predecessor of the defendant railway company, for depot purposes, under the act of congress known as the "Right of Way Act," approved March 3, 1875, (18 Stat. 482,) and is the ground upon which the town of Barstow is built. The land is a part of section 6, township 9 N., of range 1 W. of the San Bernardino meridian, in the county of San Bernardino, state of California. One Bugbee, the predecessor in interest of the plaintiff, settled upon a fractional part of that section, containing 51.55 acres, and embracing the 20-acre tract in controversy, in July, 1885, and on the 12th day of September of that year filed in the local land office at Los Angeles his declaratory statement therefor, and paid the required fee for filing it. September 1, 1886, he made final proof and payment for the 51.55 acres, and received a certificate of purchase therefor. This was followed by a patent from the government to Bugbee, issued March 6, 1890, and plaintiff deraigns title from him through various mesne conveyances. Prior to Bugbee's settlement upon the 51.55 acres, to wit, on the 24th day of April, 1885, the California Southern Railroad Company filed with the register of the land office at Los Angeles a map of the station grounds at Waterman, upon which was indorsed the following certificate of the president, and affidavit of the chief engineer, of the California Southern Railroad Company:

(1) "I, Geo. B. Wilbur, do hereby certify that I am the president of the California Southern Railroad Company; that the survey of the tract represented on the accompanying plat was made under authority and by direction of the company, and under the supervision of F. T. Perris, its chief engineer, whose affidavit precedes this; that the surveys, as represented on the accompanying plat, actually represents the grounds required in the north ¼ of sec. 6, T. 9 N., R. 1 W. of San Bernardino base and meridian, for the purpose indicated, and to their entire extent, under the act of congress approved March 3rd, 1875, granting to railroads the right of way through the public lands of the United States; that the company has selected no other grounds upon the public lands for similar purposes, within ten miles from the grounds represented on said plat; and that the company, by resolution of its board of directors, passed on the 22d day of April, 1885, directed the proper officers to present the said plat for the approval of the secretary of the interior, in order that the company may obtain the use of grounds described, under the said act, approved March 3rd, 1875. Geo. B. Wilbur,
"President of the California Southern Railroad Company.
"Attest: Frank H. Pattee, Secretary. [Seal.]"

(2) "Fred. T. Perris, being duly sworn, says he is the chief engineer of the California Southern Railroad Company, under whose supervision the survey was made of the grounds selected by the company for station purposes under the act of congress approved March 3, 1875, granting to railroads the right of way through the public lands of the United States, said grounds being situated in the north ½ of sec. 6, township 9 north, range 1 west, San Bernardino base and meridian, in the state of California; that the accompanying plat accurately represents the surveyed limits and area of the grounds so selected, and that the area of the ground so selected and surveyed is (20) twenty acres, and no more; that the company has occupied no other grounds for similar purposes upon public lands within ten miles of the ground designated on the said plat; and that, in his belief, the grounds so selected and surveyed and represented are actually, and to their entire extent, required by the company for the necessary uses contemplated by said act of congress, approved March 3d, 1875. Fred. T. Perris, Chief Engineer.

"Sworn and subscribed to before me this 21st day of April, 1885.
"John A. Daley, Notary Public. [Seal.]"

The map so filed with the register of the local land office was by him forwarded to the general land office at Washington, for the approval of the secretary of the interior. No copy of it was retained in the office of the register, nor was any note or memorandum of it made upon the township plat, or upon the tract book in that office. Under date June 23, 1885, the assistant commissioner of the general land office, in a letter to the register and receiver at Los Angeles, acknowledging the receipt of the map, said:

"I am in receipt of your letter of April 24, 1885, transmitting two plats filed by the California Southern Railroad Company under the provisions of the right of way act of March 3, 1875, showing two tracts of land selected by said company for station purposes, as follows: 1. At Summit Siding, situated in the S. W. ¼ and the S. E. ¼, sec. 20, town 3 N., range 5 W., San Bernardino meridian, California, containing 10 acres. 2nd. At Waterman, situated in the N. ½, sec. 6, town 9 N., R. 1 W. California, containing 20 acres. In reply you are advised that said company have filed no maps in this office showing the route of their line or road north of a point in the N. E. ¼, sec. 21, town 3 N., range 5 W., San Bernardino meridian, California. Under the regulations of this department, plats of grounds selected for station purposes cannot be submitted for approval until maps showing the route of the company's line of road where such stations are located have been filed and approved by the Hon. Secretary of the Interior. The plat of station grounds at Waterman will therefore be retained in this office until the rule indicated above has been complied with, and you will so advise the railroad company. It is also proper to state that action upon all maps and plats filed for approval under Act March 3. 1875, will be facilitated by sending the same in duplicate."

Subsequently, and on the 30th of September, 1885, a map showing "a portion of the located line of the California Southern Railroad Company at Waterman Junction" was filed in the office of the register and receiver at Los Angeles, which map received the approval of the "department of the interior" on the 31st of December, 1885; and on the same day the acting secretary of the interior approved the map of the aforesaid station grounds at Waterman, filed with the register at Los Angeles on the preceding 24th day of April. The first section of the act of March 3, 1875, enacts:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad: also ground adjacent to such right of way for station-buildings, depots, machine shops, side-tracks, turn-outs, and water-stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road."

By the fourth section it is declared:

"That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: provided, that if any section of said road shall not be

completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

By the terms of the grant no right to ground for station purposes attaches until the right of way is secured by a compliance on the part of the railroad company with the provisions of the act, for the grant is of "ground adjacent to such right of way, for station-buildings," etc. And by section 4 it is provided that the company desiring to procure the benefits of the act shall, within a certain designated time, "file with the register of the land office for the district where such land is located a profile of its road, and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office, and thereafter all such lands over which said right of way shall pass shall be disposed of subject to such right of way," etc.

So far as the evidence in this case shows, the only map filed by the California Southern Railroad Company with the register of the land office where the land in question is located, pretending to give a profile of its road, was filed September 30, 1885, which map, the evidence shows, received the approval of the "department of the interior" on December 30, 1885. But before it met with such approval, and prior to the time it was filed with the register of the local land office, Bugbee settled upon the fractional part of section 16, including the 20 acres in controversy, and had filed in the local land office his declaratory statement therefor. His settlement initiated a right which was followed up by final proof and payment for the land, in consideration of which the government issued to him, as has been seen, its certificate of purchase, and subsequently its patent, which latter related back to the date of his settlement, and perfected in him the title as of that date. The trouble with the railroad company is that it did not pursue the law, the provisions of which are plain enough. The first thing it did, so far as the evidence in the case shows, was to file with the register of the local land office a map of the station grounds desired, before it had secured the right of way for its road under the act, by filing and obtaining the approval of the secretary of the interior of the profile of its line. As already observed, the grant contained in the act of congress of ground for station purposes is of ground adjacent to the right of way. Manifestly, before any right can arise out of such grant, the right of way must be secured, which can only be done by a compliance with the provisions of the law conferring it. As the right of way had not been thus secured by the California Southern Railroad Company at the time it filed the map for the station grounds desired, with the register of the local land office, such filing initiated no right to that ground. The doctrine of the Yosemite Valley Case, 15 Wall. 77, and kindred cases, relied on by counsel, does not aid the defendant. In cases like the present, "the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right." Shepley v. Cowan, 91 U. S. 338; Sturr v. Beck, 133 U. S. 550, 10 Sup. Ct. Rep. 350. I see no escape from the conclusion that there must be judgment for

the plaintiff, without regard to the point made in his behalf, that the evidence shows that the ground claimed for station purposes is not adjacent to its road as located and built.

There will be judgment for plaintiff.