# WASHINGTON AND IDAHO RAILROAD COMPANY v. OSBORN.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF IDAHO.

No. 5. Argued November 13, 14, 1895. — Decided December 2, 1895.

A railroad company whose road is laid out so as, under the provisions of the act of March 3, 1875, 18 Stat. 482, entitled "An act granting to railroads the right of way through the public lands of the United States," to cross a part of such public unsurveyed domain, cannot take part thereof in the actual possession and occupation of a settler, who is entitled to claim a preëmption right thereto when the proper time shall come, and who has made improvements on the land so occupied by him, without making proper compensation therefor as may be provided by law.

THE Washington and Idaho Railroad Company, a corporation organized under the laws of Washington Territory, on September 18, 1888, filed a bill of complaint in the District Court of the First Judicial District of the Territory of Idaho against S. V. William Osborn, asserting a right to construct and maintain a railroad across lands in possession of the de-

fendant. The cause was put at issue by answer and replication, and the court made the following findings of facts:

" First. That on the 5th day of July, 1886, the plaintiff became a duly organized corporation under the laws of Washington Territory for the purpose of constructing, equipping, operating, and maintaining a railroad from the town of Farmington, in Washington Territory, by the most practical route in a generally northern direction to a point at or near Spokane Falls, in said Territory, and by junction with said line near the forks of Hangman Creek, in said Territory, in a generally northeasterly direction across the Cœur d'Alene Indian reservation to a point near the mouth of the St. Joseph River, on Cœur d'Alene Lake; thence in a northerly direction along the east side of the Cœur d'Alene Lake to the Cœur d'Alene River; thence in a generally easterly direction to the Cœur d'Alene mission; thence in a southeasterly direction to the valley of the South Fork of the Cœur d'Alene River, via the town of Milo, to Wardner, Idaho Territory; and that afterwards, to wit, on the 8th day of November, 1886, by amended articles of incorporation, the plaintiff became a corporation organized to construct a like railroad from said town of Milo, following the South Fork of the Cœur d'Alene River, to the town of Mullen, and that the premises in controversy herein are situated in the valley of the said South Fork and between said towns of Milo and Mullen.

" Second. That each and all the allegations contained in the second, third, fourth, fifth, and sixth subdivisions of plaintiff's complaint are true.

" Third. That the defendant is a native-born citizen of the United States, over the age of twenty-one years, and has never had the benefit of the preëmption or homestead laws of the United States, and is in all respects qualified in law to initiate proceedings to obtain title to one hundred and sixty acres of the agricultural lands belonging to the United States, and that the lands and premises hereinafter described, and every part thereof, are a part of the unsurveyed public lands of the United States and agricultural in character, not reserved from sale, and subject to settlement under the laws of the United States.

"Fourth. That in the year 1885, one Seth McFarren and one Samuel Norman settled upon the premises hereinafter described, who in that year erected a house and other buildings thereon, marked off the corners of the same, and partly fenced the same on its exterior boundaries as defined by their corner stakes, and that said McFarren and Norman resided constantly upon said premises, living in the dwelling-house aforesaid, and constantly engaged in improving said premises, until the 18th day of March, 1886, at which date, by a deed of conveyance, in consideration of the sum of two thousand dollars, they conveyed the said premises and all the improvements thereon to the defendant, and that the defendant at the time of said purchase caused the said premises to be surveyed by a surveyor and erected new corner posts at each corner thereof, and caused such posts to be plainly marked, so as to indicate the corners of said premises, and with the name of said Osborn as the claimant, and that after said purchase the defendant filed in the office of the county recorder of Shoshone County, Idaho, his declaration to hold said premises under the preemption law, under the possessory land act of said Territory, and that said premises contain less than one hundred and sixty acres, and are described as follows, to wit. . . .

"Fifth. That during all the time since the 18th day of March, 1886, the defendant has resided upon said premises and still resides thereon, making the same his home, and has made improvements thereon to the value of eight thousand dollars, consisting of a hotel, barn, stables, ice-house, cellar, fences, clearing and cultivating 60 acres of the land, etc., and that prior to the making of any survey for a railroad by plaintiff over the same in the year 1886 the defendant enclosed all of said premises by a substantial fence, excepting a portion of the line on the south side thereof where the base of the mountain and the fallen timber made a natural barrier sufficient to turn stock, and with the exception of a few places on the north line of said premises where the steep bank of the river formed a natural barrier sufficient to turn stock, and that at the time said defendant settled thereon he intended and ever since has intended and now intends to obtain title to said premises under

the preëmption laws of the United States as soon as the same shall be surveyed by the government, and that the defendant is not the proprietor of 320 acres of land in any State or Territory, and did not quit or abandon a residence on his own land to reside upon the public lands in this Territory, and that the defendant has not settled upon or improved the said premises to sell the same on speculation, but in good faith to appropriate the same to his own exclusive use, and that he has not directly nor indirectly made any agreement or contract in any way or manner with any person whatsoever by which the title which he may receive from the government shall inure in whole or in part to the benefit of any person except himself."

The conclusions of law found by the court were, in substance, that Osborn, the defendant, was, and all times since the 18th day of March, 1886, had been the owner of, as against all persons except the United States, and in possession of the land in dispute ; that the title and right of possession of defendant in and to said premises were prior and paramount to the right of way of the plaintiff over the same ; and that the defendant was entitled to a judgment. A judgment dismissing the bill was entered on October 4, 1888, and this judgment was, on appeal to the Supreme Court of the Territory of Idaho on March 19, 1889, affirmed.

*Mr. A. A. Hoehling, Jr.*, and *Mr. Samuel Shellabarger*, (with whom were *Mr. J. F. Dillon, Mr. W. W. Cotton*, and *Mr. J. M. Wilson* on the brief,) for appellant.

*Mr. A. B. Browne*, (with whom was *Mr. A. T. Britton* on the brief,) for appellee.

Mr. Justice SHIRAS, after stating the case, delivered the opinion of the court.

This case is before us on appeal from a judgment of the Supreme Court of the Territory of Idaho affirming a decree of the District Court of that Territory, which decree dismissed

a bill of complaint brought by the Washington and Idaho Railroad Company against William Osborn.

The railroad company was organized under the laws of the Territory of Washington, and was constructing its road from a point in that Territory, by a route through the Territory of Idaho, to the town of Missoula in the Territory of Montana. In constructing its road through the Territory of Idaho the plaintiff company encountered, in Shoshone County, a tract of land in possession of Osborn, across which the company desired to run the line of its road. Osborn refusing to grant permission, the railroad company instituted, under the laws of the Territory of Idaho, proceedings in condemnation to condemn a right of way for its railroad over and through the land of Osborn. Under these proceedings, damages were assessed in favor of Osborn in the sum of $6670. The railroad company then filed its bill, alleging that prior to the commencement of said proceedings for condemnation the company did not know nor could obtain sufficient information to advise it of the nature and character of Osborn's title, and that, from the testimony in those proceedings, the company was advised and believed that Osborn had no title or right to the possession of the premises and right of way sought to be condemned, and that in equity and good conscience it should not be compelled to pay Osborn any compensation for said right of way.

Conceding, but not deciding, that it was competent for the railroad company to abandon its condemnation proceedings, and to challenge the defendant's title by a bill in equity, we shall now consider the merits of the case as disclosed in the findings of facts.

The plaintiff's side of the controversy is substantially this: The Washington and Idaho Railroad Company, as a corporation of the Territory of Washington, having filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, was entitled, under the act of March 3, 1875, c. 152, entitled "An act granting to railroads the right of way through the public lands of the United States," 18 Stat. 482, to a right of way through the public lands of the United States to the extent of

one hundred feet on each side of the central line of its road; and as the trial court found that the land claimed by Osborn was a part of the unsurveyed public domain of the United States, and that Osborn had never filed or entered the said land in any United States land office under any existing law of the United States, the company claims that it is within the doctrine of the many decisions of this court, which hold that a party, by mere settlement upon the lands of the United States, although with a declared intention to obtain a title to the same under the preëmption laws, does not thereby acquire such a vested interest in the premises as to deprive Congress of the power to divest it by a grant to another party. *Frisbie* v. *Whitney*, 9 Wall. 187; *The Yosemite Valley case*, 15 Wall. 77; *Buxton* v. *Traver*, 130 U. S. 232.

In brief, the plaintiff claims that, having been incorporated and organized under a law of the Territory of Washington, and having complied with the provisions of the act of March 3, 1875, the company became vested with a right of way through the public lands of the United States, subject only to the exception contained in the fifth section of said act, wherein it is enacted that the act shall not apply " to any lands within the limits of any military park or Indian reservation, or other lands specially reserved from sale," and within which exception the defendant's claim does not come.

It is claimed on the side of the defendant that while it is true that his rights, arising out of mere prior possession and cultivation of public lands, cannot prevent Congress from conferring these very lands on other parties by a grant, yet that Congress has not, in the present case, so conferred these lands on the plaintiff company, but has, on the contrary, recognized and preserved the defendant's rights by the provisions of the third section of the act of March 3, 1875.

In the case of *Buxton* v. *Traver*, 130 U. S. 232, 235, this court said: " A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase. If, within a specified time after the surveys, and the return of the township plat,

the settler takes certain steps, that is, files a declaratory statement, such as is required when the surveys have preceded settlement, and performs certain other acts prescribed by law, he acquires for the first time a right of preëmption to the land. . . . He has been permitted by the government to occupy a certain portion of the public lands, and therefore is not a trespasser, on his statement that when the property is open to sale he intends to take the steps prescribed by law to purchase it; in which case he is to have the preference over others in purchasing, that is, the right to preëmpt it. The United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject. They simply say to him, if you wish to settle upon a portion of the public lands, and purchase the title, you can occupy any unsurveyed lands which are vacant and have not been reserved from sale; and, when the public surveys are made and returned, the land not having been in the meantime withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them."

It must, therefore, be conceded that Osborn did not, by maintaining possession for several years and putting valuable improvements thereon, preclude the government from dealing with the lands as its own, and from conferring them on another party by a subsequent grant.

On the other hand, it would not be easy to suppose that Congress would, in authorizing railroad companies to traverse the public lands, intend thereby to give them a right to run the lines of their roads at pleasure, regardless of the rights of settlers.

Accordingly, when we examine the act of March 3, 1875, upon which the plaintiff rests its claim of right to appropriate to its use, without compensation, the land and improvements of Osborn, we find, in the third section, an express provision saving the rights of settlers in possession. That section is in the following terms: "That the legislature of the proper Territory may provide for the manner in which private lands and possessory claims on the lands of the United States may be condemned, and where such provision shall

not have been made, such condemnation may be made in accordance with section three of the act entitled ' An act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military, and other purposes, approved July first, eighteen hundred and sixty-two,' approved July second, eighteen hundred and sixty-four.'"

The legislature of the Territory of Idaho, in pursuance of said third section, did provide a law for the condemnation by railroad companies of the right of way over possessory claims, (Rev. Stat. of Idaho, Title 7,) and undoubtedly the defendant's claim was a possessory one, within the meaning of the legislation of Congress. Indeed, as we have seen, the plaintiff company recognized the applicability of this section and instituted proceedings of condemnation under the Idaho act before it occurred to it to ask the aid of a court of equity in taking possession of the defendant's land and improvements without compensation.

We find no error in the judgment of the Supreme Court of the Territory of Idaho, and it is accordingly

*Affirmed.*