Howry J.,
delivered the opinion of the court:
The plaintiff in this case, prior to 1867, entered upon a tract of unsurveyed Government land in Humboldt County, Cal., and erected thereon certain improvements, consisting of a dwelling and outhouse, and also planted a crop of corn thereon. The improvements erected on this land were made out of timber out from the public domain.
In June, 1867, while plaintiff was absent from his house, Indians attacked his dwelling, shot his wife, burned the dwelling and outhouse, destroyed his growing crop and other property on the premises. This action is brought to recover for the property so destroyed, including the improvements erected on said premises under the Act of March 3,1891 (26 Stat. L., 857).
It is earnestly insisted on behalf of the defense that he can not recover for the improvements erected on said land and destroyed by the defendant Indians; that plaintiff was a trespasser upon this land; had erected improvements from timber cut from Government lands without the authority or consent of the Government; that the improvements became a part of the realty, and consequently the property of the Government. This reasoning is plausible, and advances the correct rule as applicable to a trespasser who takes possession of another’s real estate and makes improvements thereon. But this is not the correct rule to apply in this case. The plaintiff in occupying the public domain and building thereon from materials obtained therefrom can not be termed a trespasser in the eyes *306 of tbe law. We know of no law, nor have we been cited to any by learned counsel for defense, making it unlawful for plaintiff to occupy and improve unsurveyed public lands. On the contrary, the policy of the Government has been to invite immigration to these unsettled frontier lands. Great inducements in the way of preemption and homestead rights have been held out to the hardy pioneer to enter upon, settle, and improve such lands. Under the Act of Congress of June 2, 1862 (12 Stat. L., 413), it is provided in section 1:
“ That all the lands belonging to the United States to which the Indian title has been or shall be extinguished shall be subject to the operations of the preemption act of the fourth of September, eighteen hundred and forty-one, and under the conditions, restrictions, and stipulations therein mentioned: Provided, however, that when surveyed lands are claimed by preemption', notice of the specific tracts claimed shall be filed within six months after the survey has been made in the field; and on failure to file such notice, or to pay for the tract claimed, within twelve months from the filing of such notice, the parties claiming such lands shall forfeit such right thereto, provided such notice may be filed with the Surveyor-General, and to be noted by him on the township plats, until after arrangements have been made by law for that purpose.”
This act authorizes and invites the preemption of all lands belonging to the public domain to which the Indian title has been extinguished, whether surveyed or unsurveyed. And when a party has- occupied and improved unsurveyed public lands he has the right, under said act, of exercising the privilege of claiming said land by preemption for the period oí six months after it shall have been surveyed. This act does not make it unlawful, or a trespass, to occupy and improve such unsurveyed land, but authorizes such occupancy and improvement, and upon the occupant doing this he is offered the privilege not only of permanently retaining the possession of said laud, but of acquiring an absolute title to the land itself upon paying a small nominal consideration therefor.
This same policy of the Government in inducing immigrants to locate upon and improve the unoccupied public lands is contained in the Act of September 4, 1841 (5 Stat. L., 455), except under that act the right by preemption to acquire the title to the land was limited to lands which had been previously surveyed. The same policy is also expressed in the homestead Law of May 20, 1862 (12 Stat. .L., 392).
In the case at bar the plaintiff’s right of exercising the privi *307 lege of preempting- tbe land occupied and improved by him had not expired at the time of the depredation, and he was in possession of the land upon the implied invitation of the Government. His possession was not unlawful'or in violation of any act of Congress. His interest in the improvements was such, after he had put them on the land, he could take the said improvements off, if he saw fit to do so, without molestation from the Government.
In the case of Buxton v. Braver (130 U. S. R., 232,235) it was held that a settlement upon the public lands in advance of the public surveys is allowed to parties who, in good faith, intend, when the surveys are made and returned to the local land office, to apply for their purchase. The United States make no promise to sell such settler the land, nor do they enter into any contract with him upon the subject. And in affirming this case it was subsequently held that when the settler maintains possession for several years and puts valuable improvements thereon the Government is not precluded from dealing with the lands as its own and from conferring them on another party by a subsequent grant; but, on the other hand, “it would not be easy to suppose that Congress would, in authorizing railroad companies to traverse the public lands, intend thereby to give them a right to fun the lines of their roads at pleasure, regardless of the rights of settlers.” (Washington and Idaho Railroad v. Osborn, 160 U. S. R., 103, 109.)
The act under which this suit is brought, and the previous acts of Congress promising indemnification under certain conditions, referred mainly to settlers on our frontiers, and such rights of property as such settlers had there and improvements placed upon the public domain and destroyed by Indians in amity under the conditions shown here are properly the subject of compensation.
In determining the values of the outhouses and dwelling, however, we can not lose sight of the fact that the materials for their construction were taken from the public land, and the improvements destroyed merely represented the plaintiff’s labor.
The conclusion therefore is that the destruction of the improvements placed by plaintiff upon said land and of his other property thereon situate bylawless Indians belonging to. the defendant tribes in amity with the United States was a depredation for which he is entitled to recover judgment against *308 said defendants, the Hoopa Indians, and the United States for the sum of $965, the value of the property found to be destroyed.