[Civ. No. 185.   Second Appellate District.—April 4, 1906.]

# SOUTHERN CALIFORNIA RAILWAY COMPANY, Appellant, v. CHARLES O'DONNELL, Respondent.

MINING CLAIM—PARAMOUNT RIGHTS OF LOCATOR OF LODE—SUBSEQUENT LOCATION OF RAILROAD AND STATION GROUNDS.—The possessory rights of the locator of a lode mining claim, upon mineral land, the location of which was made and kept good pursuant to law, prior to the filing and approval of the map of definite location of a railroad, and before the subsequent selection by the railway company of the land upon which the mining claim is situated, for its station grounds, are prior and paramount to the rights of the railway company, to the extent of the valid limits of such mining claim.

ID.—EXTENT OF LOCATION—LODE RUNNING CROSSWISE—CHANGE OF END LINES—RESTRICTION OF AREA.—Where the mining claim, as located, included a parallelogram, thirteen hundred and fifty feet in length, and three hundred feet in width, but the lode was found to run crosswise of the claim, although the validity of the location is not thereby affected, the side lines of the claim become its end lines, and the rights of the locator are restricted to the area within the side lines three hundred feet in width on each side of the vein or lode.

APPEAL from a judgment of the Superior Court of San Bernardino County.   Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

T. J. Norton, and U. T. Clotfelter, for Appellant.

Henry M. Willis, for Respondent.

ALLEN, J.—Action to determine adverse interests in real property.   Findings and judgment in favor of defendant as to certain of the premises described, from which plaintiff appeals, as well as from an order denying a new trial.

The claim of defendant to the property is based solely upon a lode mining location.   The finding of the trial court that defendant, ever since the spring of 1883, was and has been the

owner of and in possession of a specific portion of the disputed premises can only be taken as impliedly finding that the mineral location was actually made in 1883 as alleged; that the land was mineral in its character; that the claim was properly monumented; that the annual work was done thereon as provided by law and the mining regulations; and that the claim was not abandoned. (*Trevaskis* v. *Peard,* 111 Cal. 603, [44 Pac. 246].) Evidence appears in the record tending to the support of each of such implied findings and to the general finding to the extent of the ground covered by the mineral location; and upon this appeal we must accept those facts as established.

The principal contention of appellant is that, notwithstanding the entry and location of defendant's mine, under the act of Congress known as "the right-of-way act," approved March 3, 1875, the lands included in defendant's location were not open to mineral location, but had been previously granted to plaintiff. The first section of the right-of-way act provides:

"That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state . . . which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proof of its organization under the same, to the extent of one hundred feet of each side of the central line of said road. Also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad. Also ground adjacent to such right of way for station buildings, depots, machine-shops, sidetracks, turn-outs and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

"Sec. 3. That the legislature of the proper territory may provide for the manner in which private lands and possessory claims on the public lands may be condemned," etc.

"Sec. 4. That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same

be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a profile of its road; and upon approval thereof by the Secretary of the Interior, the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass, shall be disposed of subject to such right of way. Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road.''

Plaintiff corporation came into existence in 1882, a year preceding the mineral location of the defendant. It did not, however, procure an approval of its map of definite location by the Secretary of the Interior until December, 1885, until which date no right to select the premises in question as station grounds existed. (*Lilienthal* v. *Southern Cal. Ry. Co.,* 56 Fed. 703). The language employed in the first section of the right-of-way act, when used in other acts granting to specified corporations rights of way and other lands, has been uniformly held to be a grant *in praesenti;* and it is well settled that when the map of definite location is subsequently filed the rights of the grantee attach under the doctrine of relation at the date of the passage of the act and cuts off any and all intervening rights claimed by third parties. A different construction of the right-of-way act has been announced in *Lilienthal* v. *Southern Cal. Ry. Co.,* 56 Fed. 703, *Washington & I. R. Co.* v. *Osborn,* 160 U. S. 103, [16 Sup. Ct. 219], and *Spokane Falls etc. Ry. Co.* v. *Zeigler,* 167 U. S. 65, [17 Sup. Ct. 728], and this different construction is made necessary by reason of the provisions of sections 3 and 4 of the right-of-way act, which are not found in any of the specific grant acts. It will be observed that by section 4 of the right-of-way act there is reserved to the United States the right to dispose of its public lands free from such right of way until a map of definite location is filed and approved; for it provides that after such filing and approval all of such lands shall be disposed of subject to such right of way. ''The in-

tention could only have been to confer the right over such public lands as were not disposed of when the roads were actually located." (*Radke* v. *Winona etc. Ry. Co.,* 39 Minn. 262, [39 N. W. 624].) If, therefore, the lands between the termini of the road as expressed in the articles of association are subject to disposal until the route is approved, it can only be upon the theory that they still remain a part of the public domain. If they, therefore, still remain a part of such public domain, subject to sale, they must of necessity be subject to settlement and to rights of mineral location; for, that land may be open to location, three things are essential: "1st. It must be land containing valuable mineral deposits. 2d. It must belong to the United States. It must be a part of the public domain at the time of the location. 3d. It must be unoccupied and unappropriated by others under claim of right." (Ballinger & Adams on the Law of Mines and Mining, p. 197.) Rights of mineral locators are possessory rights. Section 2322 of the Revised Statutes of the United States declares: That "the locators of all mining locations . . . shall have the exclusive right of possession and enjoyment of all of the surface included within the lines of their location." That the doctrine of relation will not be extended to cut off settlers intermediate the passage of the act and the filing of the articles of association is determined in *Washington & I. R. Co.* v. *Osborn,* 160 U. S. 103, [16 Sup. Ct. 219], and this upon the theory that Congress would not, in authorizing railroad companies to traverse the public lands, intend thereby to give them a right to run the lines of their road at pleasure, regardless of the rights of settlers. The rights of one entering upon the public domain and locating and working a mineral claim are of as high order as those of a settler, each of whom is in possession under rights initiated which may, by the observation of precedent conditions, ripen into the right to a final patent. The mere possessory right involved in *Doran* v. *Central Pacific R. Co.,* 24 Cal. 246, and *Southern Pacific Co.* v. *Burr,* 86 Cal. 282, [24 Pac. 1032], was held in *Washington & I. R. Co.,* v. *Osborn,* 160 U. S. 103, [16 Sup. Ct. 219], to be of such character as under the act of 1875, to establish an equity which would preclude the application of

3 Cal. App.—25

the doctrine of relation in so far as it affected such rights; while in the Zeigler and Lilienthal cases before cited the rights of each of the claimants attached intermediate the filing of the map of definite location and the filing of the articles of association, as in this case.

We are of opinion, therefore, that to the extent of the proper area of defendant's mineral location the court properly found defendant to be the owner and in possession thereof.

While, as before stated, we are of opinion that the trial court correctly found that defendant was the owner of the land embraced within his mineral location, yet in its findings and judgment specifying the area of such location the same are excessive. The court finds that the mineral claim of defendant is in the shape of a parallelogram about thirteen hundred and fifty feet in length east and west and three hundred feet in width north and south. It is conceded that the vein or lode within defendant's claim runs in a northerly and southerly direction and the location was crosswise of the vein. This being true, the side lines are really end lines, considering the direction of the lode on the surface. (*Argentine Co.* v. *Terrible Co.*, 122 U. S. 485, [7 Sup. Ct. 1356].) The location is valid, but the rights of the locator are restricted to the area within the side lines three hundred feet on each side of the vein or lode. It is not possible from the record to determine with sufficient exactness where the vein or lode is actually situated to warrant us in a modification of the decree. An order will therefore be made reversing the judgment of the court and remanding the cause for a new trial.

Smith, J., and Gray, P. J., concurred.

By the COURT.—In accordance with the opinion filed in this case, the judgment and order appealed from are reversed and the cause remanded for a new trial.